Each side will have 15 minutes. If the appellant would like to reserve time for rebuttal, please be aware that you are responsible for keeping track of your own time and letting me know whether or not you actually want to reserve time for rebuttal. Thank you, Your Honor. James Martin, and may it please the Court, three minutes for rebuttal. Thank you. As this Court knows, this appeal has two central issues in it. One relating to the liability insurance policies that the County holds that covers environmental damage. And the second, relating to the declaratory relief claim, which has been dismissed from the case summarily and sua sponte, without any chance for the County to respond. On the first issue, the scope of coverage, there are three independent errors that compel this Court to reverse. The first one, under California policy construction principles, is that the insured here offered a reasonable construction of the aggregate limit provision in the policy, specifically between the relationship of the declarations page to the limit of liability section that provided that the aggregate limit applied only separately to products liability and personal injury from occupational disease. Under California policy construction principles, that reasonable construction should be accepted. It's preferred, it favors the insured, and it provides for coverage. Yet, the District Court's opinion doesn't address that reasonable construction at all, and that is the first and initial error. The second is that for a coverage limiting provision to take hold, which is what's being argued here, that provision has to be, under California law, conspicuous, plain, and clear. Meaning that the ordinary insured can find it, they can read it, they can understand it, and it means what the insurer says it does. This provision in this contract doesn't meet that standard. It doesn't come close to getting the result that the insurance company wants. They spend over 20 pages in their brief on a linguistic analysis of this, splitting commas, adding language, making the provision redundant. But the one thing that doesn't accomplish is to make it conspicuous, plain, and clear under California law, a standard that they never try to meet and that the District Court, again, did not address. The third issue, Your Honor, relates to the admission of extrinsic evidence. The county came forward with two types of extrinsic evidence here. One on policy history, which demonstrated its construction of the aggregate limit provision was historically true at the time these policies were sold. And the second was course of performance evidence that came from the company, that is the insurance company itself, in dealing with the policies in issue. The District Court initially found that the policy was clear, and having found that the policy was clear, then turned to the extrinsic evidence and said it wasn't going to consider it. That's exactly backwards under more than 40 years of California law. California law provides that extrinsic evidence that supports a reasonable construction of an insurance policy should be admitted and considered at the threshold in determining whether the insurance construction is reasonable on the one hand, or there's a potential for ambiguity on the other. We cited the Wolfe case to this court, which is a case that deals with the trial court's treatment of extrinsic evidence, reverses, and it's the exact error, Your Honors, that occurred here. So on the coverage ruling, there are three independent bases for reversal, not dealt with properly by the District Court, and those legal errors are fundamental to the coverage analysis. All of that, Your Honors, got pushed aside because the court relied on the Garamendi case, claiming that Garamendi provided a judicial construction that the court had to accept at the expense of the reasonable construction offered by the insured, the failure of the insurance company to demonstrate conspicuous, plain, and clear, and at the expense of the extrinsic evidence. Garamendi does not, Your Honors, accomplish any of that. It doesn't accomplish it on its facts, it doesn't accomplish it in its legal analysis, and it most assuredly does not meet the requirements, excuse me, Your Honors, for judicial construction to be binding under California law. Now let me start on that issue with the following proposition that is clear under California law. It is California's law that insurance policy language is not immutable. In different contexts with different issues, the same policy language can mean different things. That is the accepted analysis and the preferred one. Taking a judicial construction at the expense of that, which is what happened here, is a rare exception to the rule, and it only applies when you have a California Supreme Court case, for example, directly analogous on its facts, involving the coverage provision, and that decision must declare the coverage provision to be, or limitation, to be clear and unambiguous. The other situation where you see it is where there are a series of Court of Appeals decisions doing exactly the same thing. That is, construing similar policy language on similar facts and finding that the policy is clear and unambiguous. Counsel, does it matter that Garamendi policy was an excess policy and our policy here is an umbrella coverage policy? It matters a lot, Your Honor. Why? Because, as I said, the prevailing rule in California is that where contexts are different, policy language can mean different things. Garamendi is different on its facts in several particular respects. One is, just mentioned by Your Honor, that it had an excess policy and an underlying policy, and the issue was the gap in coverage between those and how were we going to construction that resolved that. Interestingly enough, in the process of resolving that, Garamendi did exactly what we're asking the Court to do here. It started with the propositions that I started with, that the insured's reasonable construction is what we're looking for, that if there's going to be a limitation on that, it has to be conspicuous, plain, and clear, and then if we don't have those things, the default position is in favor of coverage, either by virtue of accepting the reasonable construction or ambiguity. Either way, reversal is required here. The problem that I have when I look at the Garamendi case is that the Court begins, I think, with some of the propositions that you would take. It says that this is nearly incoherent. Right. The problem there is that you've got what you really have is a party that was stuck between two insurance companies, one who had the underlying policy, and one was the excess insurer, and the excess insurer would like to make the liability of the underlying policy unlimited so that the excess never kicks in. So it really turns out to be sort of a battle between insurance companies, so it's harder to sort of say, well, it's not really between the insured and the insurer. It's only they're sort of standing on the sidelines in that one. I'm just not sure what to do with this. Garamendi deals with a Washington case that comes out the other way. Right. It's exactly the same provision. Sotomayor. Let me see if I can help the Court with that. The answer is Garamendi is not a binding judicial construction on this Court in this case that obviates the analysis that Garamendi itself undertook and that we're asking this Court to undertake. Garamendi is different on its facts, and it doesn't address analogous coverage provisions to this one. So California is not going to give Garamendi a binding judicial construction. The rest of the opinion, Your Honor, lines up exactly with the results we want. The Court finds that the provision is ambiguous. Now, the other side has argued that that ambiguity finding applied to different language in the policy other than the aggregate limit provision. Your Honor, that dog won't hunt. From the beginning of the opinion to the end, the focus is on the aggregate limit provision. The Commissioner's decision found the aggregate limit provision to be clear and unambiguous. The Court of Appeals reversed that. So it didn't find that the provision was clear and unambiguous. It held exactly the opposite. At the end of the day, we are back to the policy language in this case, free of Garamendi. And when we look at that, we get a reasonable reading that favors the insured. We don't have a clear and conspicuous coverage limitation that the insurer can rely on. And the extrinsic evidence itself confirms the reasonableness of the insured's position. That means reversal. Now, as for the declaratory relief, it's clear that the Court, in making its sua splante ruling, went too far. We never got a chance to respond, and under this Court's Hoard decision, that is enough for a reversal. Declaratory relief was combined with other causes of action in the complaint. In this Court's decisions, that means the declaratory relief claim should stay in the case. And finally, the Court's decision as to why it got rid of the declaratory relief didn't apply to the declaratory relief claim. It was future benefits that related to the bad faith claim. The declaratory relief claim, in this case, Your Honors, is very much alive. It deals with the number of occurrences, a disputed issue in this case, that implicates millions of dollars, whatever happens to the in this case, the trial court found that it was an issue of fact that was worthy of trial, and that's what we should be able to try in connection with our DEC relief claim. There is reversible error there, and that claim should go back in the case, irrespective of what this Court does with the aggregate limit. And I see I'm hitting my rebuttal time here. All right. Thank you, Counsel. Good morning. May it please the Court. Aguello Repis on behalf of the Apley Insurance Company of the State of Pennsylvania. Let's be clear about what this case is not about. This is not a coverage denial. This is not a deprivation of coverage benefits. To be clear, Insurance Company of the State of Pennsylvania has already paid the county $9 million in satisfaction of its investigation and remediation costs, or the equivalent of one per occurrence limit under the policies. And to be clear, if the county is ultimately successful in proving more than one distinct and separate occurrence, they could recover potentially another per occurrence limit. So those are not, those, it's not an issue of there's no coverage. There is coverage. The question is how much. The question is, is there a cap, an aggregate limit on the number of per occurrence limits that the county can recover? Or is it unlimited? And the answer plainly is that there is a cap. There is an aggregate limit on the number of per occurrence limits that the county can recover. This is not an unlimited policy here. And this is evident from two things. From one, the plain language of the policies. And number two, from precedent, including this court's own precedent in San Diego Unified Port District decided just a few years ago. Now to begin with, let's start with the plain language of the policy as we must. And I would cite you to, because the policy language is slightly microscopic in the record, so I cite you to page seven of our appellee brief for an easier read of the policy language. And we're looking at two provisions, which is the declarations page, item 2B, which describes the aggregate number two, which refers to the limit of liability. And the limiting provision, and again, we have to remember that we have to construe the language in context of its function, of its purpose. It's a limiting provision here. And the language, the relevant language describes the ceiling of the insurance company's liability. And the ceiling of that liability is described in terms of a per-occurrence limit, which refers to item 2A of the declarations. And then it says, subject to a limit as stated in item 2B of the declarations, in the aggregate, and then some language, and then comma, separately in respect to product's liability and respect to personal injury occasioned by occupational disease. Counsel, let me ask a few questions here. I'd like to interject. Sure. If you are correct that it's obvious on the face of the policy that, you know, it's a $9 million cap per occurrence, you know, we received the briefing where the county tells us that your own course of performance, you've paid $34 million, which is excessive of the $27 million if it was really just $9 million per, you know, annual occurrence or whatnot. So one way is that if you are sure that it's only $9 million, why would you pay an extra, you know, $7 million? And then also, they presented a bunch of internal documents that show that ICSOP read the insurance provisions the way that they read the insurance provisions. So walk me through those two, please. Sure. So to be clear, the county is getting away from the plain language of the policy and wants you to focus on all this extrinsic evidence to... Well, counsel, in fairness, your folks are perfectly capable of reading the plain language of the policy, and somebody botched this big if that's what happened, because somebody's paid way too much. And somebody has already marked on your documents that there's no limit on liability. So the plain language argument didn't work internally very well. Well, let me get back to the loss run to address the loss run. And I want to back up for a minute to provide some important context to this extrinsic evidence. In the nearly 20-year claim history between the county and ICSOP, the general aggregate limit had never been an issue. All the claims until this one, the Chino Airport claim, had all been resolved within the general aggregate limit. So this was a going issue until now. And it really only became a going issue when the county claimed that there was more than one occurrence, that there were five or perhaps as many as 18 occurrences. So you have to remember that context when you're looking at these documents. This was not a going issue for anybody at that point in time. Let me address the loss run. The loss run does not... There's no evidence that this is a representation of what ICSOP held out as an allocation of prior payments to property damage losses for purposes of showing exhaustion or reduction of the general aggregate limit. There's no evidence. We disclosed that during discovery, but then the county didn't ask us to do anything with it to allocate those losses. They didn't ask our witnesses anything about the loss run. So it is not what they say... They have no evidence. It's just a document at a point in time where there was no request to allocate. A document that says that there's no aggregate limit. Okay. If you're talking about the internal documents... Yes. What is important... I think that was judged to all those questions. There were two. So there was the loss run and then there... Sorry. There were some other documents. So let me... I want to break that down a little bit on the $34 million, the loss run. Are you... Explaining to this court then that what that $34 million represents isn't just property damage payouts. It has to do with some of the other, and that's why it's in excess of, let's say, $27 million? Well, we don't have... Sorry. I'm not trial counsel. I don't personally know. It's not in the record. I know what's in the record. And the point is that there's no evidence in the record to show that that precise allocation was undertaken and what it represents. Again, it's at a point in time... I mean, these loss runs are subject to change. I mean, this was not being done for purposes of tracking exhaustion of the general aggregate limit because that was not yet a going issue. Again, this is the first time it has been a going issue. So this is not what the county... They haven't presented evidence that it is what it purports to be, that is in excess of the general aggregate limit. And to be clear, we only get here to the evidence if what the county is proposing is a reasonable interpretation of the policy. And it's not. We have Garamendi. We have, more importantly, this court's decision. And I didn't hear Mr. Martin one time mention this court's decision in San Diego Unified Port District, where this court was presented with the same type of extrinsic evidence, for example, how these older policies... Counsel, I still haven't... You can shift over to Garamendi if you want. I'd still like to have an answer to Judge Dalba's question. I don't think you've come close to answering it. Why do your documents... I'm looking, for example, at the AIG document, which says there is no aggregate limit that applies here. So what do we do with that? And I just want you to assume from my questions that we're going to overcome all of the hurdles that we would have to overcome in order to be able to look to extrinsic evidence. I'm very, very curious as to why we have these internal documents from your client that suggest that they believed that there was no aggregate limit here. I don't know why they said that, Your Honor. That's what the evidence says. The reality is they're incorrect. That is not the case, as this court has held in San Diego Unified Port District. And what is not... It's not important what the individual adjusters believe that the policy says. What is important is what the policy actually says and what this court has interpreted, the same language to actually say, and this court has interpreted it as unambiguous. This is form language that appears in lots of policies. We saw it in Garamendi. We saw... Let's talk about Garamendi. Garamendi, as I mentioned to opposing counsel, was an excess policy and this was... Here, we're dealing with an umbrella policy. Does that matter? It does not matter, Your Honor. It's form language, as I mentioned. So whether it appears... These are often singular policies that have an excess side and an umbrella side. And so you should construe form language the same. It means the same thing. The notion that the language can mean something different based on whatever happens to help the policyholder in that particular instance... So it doesn't matter that in Garamendi, the policy had to be exhausted, whereas here it doesn't matter if the policy is exhausted or not for the property damage provision to kick in, so to speak. I'm not sure you mean by exhausted. If there's one per occurrence limit that has been paid and there is a three-year policy, so potentially three of those, and we've not paid more than that because our position is there is one distinct occurrence, you would only really get to the general aggregate issue is if there were occurrences in excess of one three-year policy. So... And they haven't... There's currently a trial to be decided on the number of occurrences, so we're not quite there yet. But in Garamendi, the fact that it was an excess policy and here it's an umbrella policy, that is not a distinction with any kind of material difference because we are talking about form language. And Garamendi found ambiguity in an unrelated... It was the same overall provision, but they said what was ambiguous is the fact that we're talking about an annual period, which is the same thing that our policy says. But in Garamendi, it was a one-year policy, so that made no sense. We have a multi-year policy, so that ambiguity finding doesn't track here. And the reality is when it came to the language at issue, what does separately in respect of product liability and personal injury occasioned by occupational disease, the court there had no trouble concluding that separately does not mean only as the county has urged you to read it. The court there in Garamendi said the fact that this limit of liability provision doesn't mention property damage specifically just means that there's no separate aggregate limit for that type of loss. The general aggregate limit applies. Now, Mr. Martin Pupu's looking at the comma and looking at separately and looking at grammar and structure, but these are important contextual indicators of what the plain language of the policy says. And when that phrase separately with respect to, et cetera, is set off from the main clause by a comma, rules of contract construction say that you read that as a parenthetical. It's just an addition. It doesn't replace. If we struck everything after the comma, if we struck everything beginning with separately through the end of the sentence, I think you'd probably have a pretty strong argument. But I don't understand what that means. I don't understand this phrase at all. You don't understand the separate? Everything after separately. I don't understand what this is doing. Is it just surplusage? Should we just ignore it? So the separately, everything after the comma and then separately, what that is doing is creating, so there's a separate aggregate limit for two specific types of claims. For products liability claims and for personal injury claims occasioned by occupational disease. So those two get a separate aggregate limit. And what is that limit? That would be $9 million as well. And what is the limit for everything else? And then the general aggregate limit is $9 million per annual period for everything else. So everything that is not products liability, that is, the policy also covers, for example, advertising liability. You're telling me that for products liability and personal injury, that that is $9 million per what? Per annual period of the policy. These are three-year policies. Per year. Okay. And for everything else? So for everything else that is not those two things, it's $9 million per annual period of the three-year policy. Well, that's just exactly what you told me, isn't it? Those are the same. Didn't you just tell me that products liability would be $9 million per year? To be clear, these are additional. So 999, there are three separate aggregate limits. So one for products liability, a separate one for occupational disease, and a separate third one for property damage and everything else that does not fall into those categories. So that means then that the item 2B limit in the aggregate would be $9 million for products liability, $9 million for personal injury, and $9 million for everything else. So it would actually be $27 million? Well, remember, these are three-year policies. Sure. So that would be $27, $27, $27. Right. For one policy. But this is annualized. So for each annual period, you're telling me that your potential liability was $27 million, not $9 million? That's right. Because they're three-year policies. That's right. So it just means that there are additional aggregate limits. The three-year policy, I'm just trying to get for one year, you're telling me is that you could have paid out $27 million under this policy? Under the total policy period. It's $9 million per year of the period of the policy. They are three-year policies. So the max is $27 million for each aggregate limit within a one three-year policy. Okay. So I really lost. I don't have any clue then what this language about product liability and personal injury is doing here. Okay. So to be clear, there are the three... It's going to be anything but clear, counsel. I'm so sorry. I'm so sorry. I will try to make it clear. There are three separate aggregate limits, depending on the type of loss that we're talking about. Products gets its own, occupational disease gets its own aggregate limit and property damage plus everything else that isn't those two things, they all go under one as well. So there are three separate buckets. And that's $9 million for product per year? Per year. $9 million per year for occupational disease. Okay. And $9 million per year for everything else that isn't those things. Okay. And so if I'm adding that up on a per year basis, your potential, the potential exposure of your company would be $27 million. Per policy. Per year. The policy is three years. Well, I thought you would pay $9 million for products liability. And you could also pay $9 million on the occupational and you could pay $9 million on property. In one year. In one year. That's $27 million. Right. Okay. I can't get you to give me that answer. It's in a year. Yes. In a year, it's $27 million. So the aggregate, so if you aggregate that over three years, your potential exposure here, your limit of liability is $81 million. But for, it depends on the type of claim. I understand. Your potential liability under this policy is $81 million. Yes, for property damage claims, for the all three policies. Yeah, sure. Yes. I mean, that's just anything but clear from looking at this. But this court has already held in San Diego Unified Port District that it is unambiguous. San Diego is an unpublished memorandum disposition. It is not binding on this panel. Of course it's not binding, but it is, it's relevant and persuasive that this court has looked at the exact same language just five years ago under California law. And it's concluded that is unambiguous and that separate does not mean only. And I see that my time is coming to a conclusion. I would like to address, if I could very briefly, a couple of other things on the declaratory judgment dismissal. I'll give you one minute, counsel. Sure. Thank you. Mr. Martin said that the court sua sponte dismissed it. There was the claim is for future costs is not right under the policy. The duty to indemnify future costs does not arise until those costs are actually paid. That hasn't happened yet. And of course, the district court was under an obligation to review and ensure that the had an independent obligation to review and ensure that there was a live case or controversy before it. The court concluded that there wasn't particularly because due to the county's own litigation tactics, it got there was evidence of future costs was barred by motion in limine. So there wasn't going to be a record on which the judge could adjudicate that claim. So there was no ripe controversy. There was no live case or controversy. And for that reason, the district court properly dismissed that claim. Thank you, counsel. If there are no further questions, we respectfully request that this court affirm. Thank you. Thank you. So plainly, there is a coverage limitation here. That's what we're fighting about. So that creates the burdens under California law that are as follows. Do we have a reasonable construction of this policy that provides for coverage? We do that reasonable construction starts with the where applicable language in the declaration page and insured would then go look in the policy for where it might be applicable. That would take the reader, as we now know, to the limits of liability section. And that can be read by an ordinary lay person to mean that the per occurrence limits, aggregate limits apply only and separately to products, liability and personal injury by occupational disease. It's a perfectly natural, grammatically correct reading. It's reasonable. It's the preferred interpretation under California law. Let's look now then at the insurers burden to get by that reasonable construction. The insurer has to show that this policy conspicuously, plainly and clearly. Limits coverage in the way they're suggesting it does not. The back and forth with this court proves it and it is anything but that. The provision that they want could have been written. You would have taken where applicable out and you would have said there's a $9 million aggregate limit, period, full stop. That language not only isn't in there, the way they get it in there makes the limits of liability provision redundant, as the court proved in the back and forth. Now, as for San Diego Unified, it suffers from the same problem as Garamendi. Different policy, different issue, different language, different facts, apart from being non-presidential, which doesn't mean it's a binding judicial construction at all. Finally, on the course of performance evidence, Your Honor, the idea is that comes in at the threshold. There was kind of a merits debate here on its value. Counsel, it looks like the internal documents suggest that they paid out $34 million, which would be $7 million in excess of what they now think that they're liable. Did your client actually receive $34 million? I think we did, yes. Absolutely. I don't think that's in dispute. And if it is a problem, I'll get correction from my trial counsel, and I'll report to  But we were paid consistent with the absence of an aggregate limit. And all $34 million, in your understanding, was for products liability? I think environmental damage, yes. Property damage, which is not limited by the aggregate limit provision. Their course of performance makes perfect sense with the construction I offered. That's what makes it admissible. And then we can decide after that whether we still have a reasonable construction or there's ambiguity. But you can't exclude it at the threshold because you think the policy is plain and  That turns California law upside down. Thank you. Your time is up, counsel. Thank you. Okay. I would like to thank counsel for their argument. It was very helpful. And the court will now stand in recess. We'd like to thank the court staff for their fabulous help this week. Thank you, everyone. All rise. This court for this session stands adjourned.
judges: CLIFTON, BYBEE, ALBA